UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NICHOLAS VONTZ,

        Plaintiff,               Case No. 1:23-cv-378

v.                                    Honorable Sally J. Berens

J. WINGER et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID12.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's First Amendment retaliation claims. Because those are the only claims raised against Defendant Winger, Plaintiff's complaint against Defendant Winger will be dismissed. Plaintiff's Eighth Amendment claims against Defendants Nuttall and Fiero relating to those Defendants labeling Plaintiff as a "rat" remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan, during January of 2023. Plaintiff sues

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

LRF Assistant Deputy Warden J. Winger and LRF Corrections Officers Kyle Nuttall and Juan Fiero.

Plaintiff alleges that he has assisted many other inmates in pursuing civil complaints against MDOC personnel, including Defendants. On January 15, 2023, Defendant Nuttall called Plaintiff to the officers' station and asked whether Plaintiff had assisted Prisoner Dukuly in the preparation of a lawsuit against Nuttall. Plaintiff replied that he had.

Later that day, upon returning to his cell, Plaintiff discovered legal papers he was preparing for other inmates were spread out on his bunk. The documents included papers complaining about misconduct of each of the Defendants. Plaintiff theorizes that Defendant Fiero had conducted the search.

Three days later, Plaintiff was subjected to a strip search. He claims that Fiero informed Plaintiff that Fiero was going to "make [Plaintiff's] life a living hell." (Compl., ECF No. 1, PageID.5.) Plaintiff was then placed into the day room while Defendants Nuttall and Fiero conducted a cell search. When Plaintiff returned to his cell, he discovered that documents were mixed up and covers of his books were damaged.

On January 22, 2023, another inmate approached Plaintiff and told Plaintiff that there was a "hit" on Plaintiff with a payoff of $3,000.00. The purported reason for the hit was that Plaintiff had been giving information to the officers. Plaintiff does not say who offered the payoff and does not identify the other inmate.

The next day Plaintiff was working in the day room. Another inmate entered the day room and assaulted Plaintiff. Plaintiff restrained his attacker in a choke hold. Plaintiff claims that unidentified officers within 20 feet took no action while Plaintiff held the attacker. Eventually—

4

after four minutes according to Plaintiff—officers took Plaintiff to segregation. Plaintiff was moved from that unit.

On January 25, 2023, while Plaintiff waited in chow line, an unidentified corrections officer announced clearly and loudly that Plaintiff was a rat. That night, Plaintiff was told he was being transferred, and an unidentified inmate informed Plaintiff that Defendants Nuttall and Fiero were telling other inmates that Plaintiff was a "rat."

Plaintiff was transferred to URF.

Plaintiff contends that Nuttall and Fiero violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment when they endangered him by labeling him a "rat." Plaintiff contends that Nuttall and Fiero labeled him as a "rat" and messed up his legal papers and damaged his books in retaliation for Plaintiff's exercise of his First Amendment rights.

Further, Plaintiff claims that Nuttall and Fiero must have shared with Winger that Plaintiff was helping another inmate with a lawsuit against Winger and, for that reason, Winger arranged for Plaintiff's transfer to URF in retaliation.

Plaintiff seeks nominal, compensatory, and punitive damages, as well as declaratory relief and an injunction compelling Plaintiff's transfer to a facility near his home.

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      **A.**     **Eighth Amendment Claim against Defendants Nuttall and Fiero**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal

6

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

The Sixth Circuit Court of Appeals has found that labeling a prisoner as a snitch "puts an inmate at substantial risk of assault." *Westmoreland v. Butler County, Ky.*, 29 F.4th 721, 729 (6th Cir. 2022) (citation omitted).[2] Based on Plaintiff's allegations, that risk was apparently realized when a "hit" was placed on Plaintiff, and when he was assaulted in the day room. Although

---

[2] In *Westmoreland*, 29 F.4th at 721, the Sixth Circuit considered the claims of a pretrial detainee. Protections for pretrial detainees are provided by the Due Process Clause of the Fourteenth Amendment. *Id.* at 727. A plaintiff must demonstrate "a substantial risk of serious harm" whether the claim arises under the Eighth Amendment or the Fourteenth Amendment. *Id.* at 726-27 (noting that the element of a substantial risk of serious harm for Fourteenth Amendment claims is also an element for Eighth Amendment claims).

Plaintiff has by no means established an Eighth Amendment violation, his allegations suffice to state an Eighth Amendment claim against Defendants Nuttall and Fiero.

### B. First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claim fails at the first step. The protected conduct alleged by Plaintiff was providing legal assistance to other inmates. Without more, that is not "protected conduct." *Hermansen v. Ky. Dep't of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014) (stating that where the plaintiff "did not allege that the [other] inmate was incapable of pursuing his own grievance or had no other source of help" that "the district court correctly found that [the plaintiff] failed to state a claim as to whether he was engaged in protected First Amendment conduct"). Plaintiff fails to allege any facts indicating that the other inmates "would otherwise be unable to pursue legal redress." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Absent such allegations, Plaintiff does not state a First Amendment retaliation claim against any of the named Defendants.

Moreover, at least with respect to Defendant Winger, Plaintiff's retaliation claim fails at the second and third steps as well. Certain transfers might be sufficiently adverse to deter a prisoner from exercising protected rights. But generally, because "prisoners are expected to endure more

8

than the average citizen, and…transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see, e.g.*, *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("[T]ransfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." (internal quotation marks omitted)). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Hill*, 630 F.3d at 474 (holding that transfer to a higher security level can be sufficient to constitute adverse action); *Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney.) Although Plaintiff's request for relief suggests that he would like to be closer to home, it appears that he was transferred from one Level II facility to another. That is exactly the sort of transfer that prisoners should expect and, therefore, it is not "adverse action."

Finally, Plaintiff has not alleged facts indicating that Defendant Winger was motivated by a retaliatory intent. Indeed, Plaintiff simply speculates that the other Defendants shared with Winger that Plaintiff had assisted another inmate in that inmate's lawsuit against Winger. However, Plaintiff fails to allege any *facts* to support his speculative assertion. Indeed, the other inmate's lawsuit was not even filed when Plaintiff was informed that the transfer decision had been made. (Compl., ECF No. 1, PageID.7, ¶¶ 22, 23); Compl., *Sharpe v. Tyson*, No. 1:23-cv-117 (W.D. Mich. Jan. 31, 2023), (ECF No. 1, PageID.4, 5).

For all of these reasons, Plaintiff has failed to state a claim for First Amendment retaliation.

9

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Winger will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims against remaining Defendants Nuttall and Fiero. Plaintiff's Eighth Amendment claim against Defendants Nuttall and Fiero for labelling Plaintiff a "rat" remains in the case.

An order consistent with this opinion will be entered.

Dated:  May 22, 2023                          /s/ Sally J. Berens
                                              SALLY J. BERENS
                                              United States Magistrate Judge