UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS VONTZ #380134,

          Plaintiff,                               Hon. Robert J. Jonker

v.                                           Case No. 1:23-cv-378

J. WINGER, et al.,

          Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before me on Defendants' Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 17.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **granted** and that Plaintiff's remaining claims be **dismissed without prejudice**.

### I.  Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF), filed a complaint pursuant to 42 U.S.C. § 1983 on April 13, 2023, against Defendants J. Winger, Kyle Nuttall, and Juan Fiero based on events that occurred while he was incarcerated at the Earnest C. Brooks Correctional Facility (LRF) during January 2023. Following initial review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c), Plaintiff's remaining claims are his Eighth Amendment claims against Defendants Nuttall and Fiero for labelling him a "rat." (ECF Nos. 5 and 6.)

1

Plaintiff alleges that he has assisted many prisoners in pursuing civil complaints against MDOC personnel, including Defendants. He alleges that on January 15, 2023, Defendant Nuttall called Plaintiff to the officers' station and asked him whether he had assisted Prisoner Dukuly in preparing a lawsuit against Nuttall. Plaintiff replied that he had. (ECF No. 1 at PageID.5.)

Later that day, when Plaintiff returned to his cell, he discovered legal papers he was preparing for other inmates spread out on his bunk. The documents included papers complaining about misconduct by each Defendant. (*Id.* at PageID.5.) Plaintiff theorizes that Defendant Fiero had conducted the search. (*Id.*) Three days later, Plaintiff was subjected to a strip search. He claims that Fiero informed him that Fiero was going to "make [Plaintiff's] life a living hell." (*Id.*) Plaintiff was then locked in the day room while Defendants Nuttall and Fiero searched his cell. When Plaintiff returned to his cell, he discovered that documents were mixed up with his cellmate's documents and that covers of his books were damaged. (*Id.* at PageID.5–6.)

On January 22, 2023, another inmate approached Plaintiff and told him that there was a "hit" on him with a payoff of $3,000.00. The purported reason for the hit was that Plaintiff had been giving information to the officers. Plaintiff alleges that he refuted this claim but was told to "get off the yard." (*Id.* at PageID.6.) The next day, while Plaintiff was working in the day room, another inmate entered the day room and assaulted Plaintiff. Plaintiff restrained his attacker in a choke hold. Plaintiff claims that unidentified officers within 20 feet took no action while Plaintiff held the attacker. After four minutes, officers took Plaintiff to segregation. Plaintiff was held for about an hour and then moved to another unit. (*Id.* at PageID.6–7.)

On January 25, 2023, while Plaintiff was waiting in the chow line, an unidentified corrections officer announced clearly and loudly that Plaintiff was a rat. That night, Plaintiff was told he was being transferred, and an unidentified inmate informed Plaintiff that Defendants

Nuttall and Fiero were telling other inmates that Plaintiff was a "rat." (*Id.* at PageID.7–8.) Plaintiff was subsequently transferred to URF. (*Id.* at PageID.8.)

Defendants now assert that Plaintiff's claims must be dismissed because he failed to exhaust his administrative remedies.

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting

3

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary

judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence

is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526

U.S. 541, 553 (1999).

### III.   Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative

remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See*

*Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate

exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to

exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant

bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the

Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion,"

defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford*

*v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by
> the PLRA to "properly exhaust." The level of detail necessary in a grievance to
> comply with the grievance procedures will vary from system to system and claim
> to claim, but it is the prison's requirements, and not the PLRA, that define the
> boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for

prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to

resolve the issue with the staff member involved within two business days after becoming aware

of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is

believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive

03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the

4

prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

It is undisputed that Plaintiff did not exhaust a grievance through all three levels of the grievance process. On January 30, 2023, following his transfer to URF, Plaintiff sent Step I grievances to the LRF grievance coordinator. (ECF No. 1-2 at PageID.19–20.) Plaintiff had written in the response area on both grievance forms, contrary to the MDOC's grievance policy. Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ S ("Information should be confined to the form and not written on the back, sides, or margins of the form, or in the response area."). On February 7, 2023, the LRF grievance coordinator issued a memorandum to Plaintiff stating that his grievance was being returned because he had written in the response area. The memorandum instructed Plaintiff to make the noted correction and return the forms to the grievance coordinator. (*Id.* at PageID.21.) Plaintiff resubmitted the grievances on February 15, 2023. The LRF grievance coordinator received them on February 27, 2023, assigning them identifiers LRF-23-02-0261-28B

and LRF-23-02-0262-28E. (*Id.* at PageID.29.) The 0261 Grievance was rejected as vague, and the 0262 Grievance was rejected as untimely. (*Id.* at PageID.27, 29.)

On or about March 14, 2023, Plaintiff submitted an Expedited Legal Mail request to URF's mailroom for a Step II appeal form. The request was denied because it did not meet the definition of legal mail under Policy Directive 05.03.118. (*Id.* at PageID.33.) Plaintiff sent a kite to the mailroom on March 16, 2023, complaining about being denied use of interdepartmental (ID) mail to send his request for appeal forms to LRF. (*Id.* at PageID.34.) On March 21, 2023, the mailroom responded to the kite, noting that grievances sent to another facility do not qualify as legal mail under the policy and that URF does not have ID mail between facilities because it is located too far away. The response noted that URF does use ID mail for mail sent to personnel or inmates within URF. (*Id.* at PageID.35.) Plaintiff apparently made no further attempt to appeal the Step I rejection.

Citing *Ross v. Blake*, 578 U.S. 632 (2016), Plaintiff contends that MDOC officials rendered the grievance process unavailable to him. In *Ross*, the Supreme Court observed that a grievance process is unavailable where, among other things, "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. The Court noted that exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644; see also *id.* at 644 n.3.

Plaintiff contends that the process was unavailable to him in two respects under *Ross*. First, he contends that the LRF grievance coordinator set him up for failure by not logging and assigning a grievance identifier to his grievance as required by the grievance policy. He points to paragraph X, which states: "The Grievance Coordinator shall log and assign a unique identifying number to

each Step I grievance received, including those that may be rejected." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ X. Plaintiff contends that the grievance coordinator should have logged his grievance and assigned it an identifier before returning it to him for resubmission. Although Plaintiff does not clearly articulate this point, he suggests that had the grievance coordinator followed the procedure, his grievance would have been treated as timely filed, even if he needed to resubmit a new grievance form. Instead, he contends, the grievance coordinator's acts of not filing the grievance and returning it to him with a memorandum instructing him to resubmit the grievance amounted to a misrepresentation under *Ross*, because the grievance coordinator knew he or she could simply deny the resubmitted grievance as untimely. (ECF No. 23 at PageID.151– 52.) In spite of his argument, Plaintiff fails to identify a "misrepresentation" as set out in *Ross*; nor has he offered evidence supporting his claim about the grievance coordinator's intent. As previously noted, paragraph S of the policy addresses the form used for grievances and the requirements for a proper submission. Plaintiff failed to abide by this provision when he wrote in the response area. The policy does not specifically explain the procedure when a prisoner submits a non-compliant grievance, even one that presents a meritorious complaint. Paragraph X (assignment of identifiers) clearly applies to all grievances submitted in proper form, even those that may be rejected on one or more ground set forth in paragraph J, but does not address non-compliant grievances. Because nothing in paragraph J addresses the present situation, and no other provision in the policy requires a different result, returning the grievance to Plaintiff without first assigning an identifier was a reasonable application of the policy. In short, the grievance procedure was available to Plaintiff from the outset had his submission been in proper form.

Plaintiff's second argument for unavailability is that he had no available means to file a timely appeal of the Step I rejection. He contends that the mailroom told him (correctly) that his

grievance did not qualify as legal mail under the prisoner mail policy, Mich. Dep't of Corr. Policy Directive 05.03.118 ¶ P, and ID mail was not available at URF for grievances directed to other facilities. This left Plaintiff with one option—regular mail, which he had previously used to send his initial grievances to LRF. Defendants note that had Plaintiff used the correct form for postage, a CAR-100, he could have qualified for a postage loan under Policy Directive 05.03.118 ¶ L. (ECF No. 18 at PageID.103.) Plaintiff contends, however, that he would have been ineligible for an indigent postage loan because he had received funds in his account the previous month and, therefore, had "no recourse to timely file . . . his appeal." (ECF No 23 at PageID.152.)

But the Sixth Circuit has said that a prisoner in Plaintiff's position cannot simply throw in the towel and exclaim, "What was I to do?" Instead, "[f]aced with a policy that was not clearly unavailable, the only way to determine if the process was available, or futile, was to try." *Napier v. Laurel Cnty.*, 636 F.3d 218, 224 (6th Cir. 2011). And here, the policy "was not clearly unavailable." *Id.* First, it is not enough for Plaintiff to assert that he would not have qualified for an indigent postage loan. He did not even try to obtain a loan. But even if he had tried and was unsuccessful, the grievance procedure still was not clearly unavailable, for paragraph J.5 provides that "[t]he grievance shall not be rejected if there is a valid reason for the delay; e.g., transfer." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ J1. Assuming for the sake of argument that Plaintiff had to wait a couple of months before he had the funds to obtain postage to mail his Step II appeal, nothing prevented him from filing his appeal late and claiming that he had a valid reason for the delay, both at Step I and Step II. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("We have previously held that an inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."). As this court explained

about a prior version of the grievance policy containing the same "valid reason for delay" provision, the provision "applies to all delays not just short-term causes for delay. Thus, Plaintiff is not precluded from filing a grievance regarding an incident that occurred months or even years earlier and attempting to put forth a valid reason for the delay." *Arrington v. Scott*, No. 1:12-CV-529, 2013 WL 1080296, at * (W.D. Mich. Mar. 14, 2013). Here, Plaintiff could have argued valid reasons for the delays, but abandoned the grievance process even though he had the means to continue.

Accordingly, while the allegations—if true—are appalling, Defendants have met their summary judgment burden of demonstrating that Plaintiff failed to exhaust his available remedies.

## IV.    Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion (ECF No. 17), **dismiss** Plaintiff's remaining Eighth Amendment claims **without prejudice**, and close the case.

Dated: March 18, 2024                                   /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).